ESTATE OF ALBERT L. GOFF, Deceased, MYRTLE A. WALTER, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Goff v. Commissioner
Docket No. 2145-75.
United States Tax Court
T.C. Memo 1978-36; 1978 Tax Ct. Memo LEXIS 480; 37 T.C.M. (CCH) 199; T.C.M. (RIA) 780036; January 26, 1978, Filed *480 The Executrix of decedent's estate provided the attorney handling the estate all the information necessary to file the return prior to the time the return was due. She knew a return was required, and the attorney knew that one of his responsibilities was to file the return. No reason was given for the attorney's late filing. Held, petitioner has not shown that late filing was due to reasonable cause. Morton A. Smith, for the petitioner. Paul E. Vignone, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $3,407.49 in petitioner's estate taxes and a penalty of $851.87 pursuant to section 6651(a) [1] for late filing of the estate tax return. *481 The parties have agreed that there is a gross deficiency of $980.29 and the sole issue presented to us is whether there was reasonable cause for the late filing of the return. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. At the time the Estate's petition was filed, Myrtle A. Walter (hereafter Myrtle), executrix of the Estate of Albert L. Goff (hereafter the Estate), resided in Lake Placid, N.Y.
Albert L. Goff (hereafter sometimes decedent), died on November 2, 1971.Under decedent's will, Myrtle and a nephew, Harold Goff, were named co-executors. However, the nephew died about a week after decedent. The United States estate tax return for the Estate of Albert L. Goff was executed by Myrtle on January 30, 1974, and received by the District Director at Albany on February 19, 1974. The estate tax return was due on August 2, 1972. At the time of decedent's death, Myrtle was approximately 80 years of age. She was a widow and had never completed high school. She had no business experience except for being a house mother in a girls' dormitory at Montana *482 State University. She also had been a pastry cook and had taken in roomers at her home in New York. Decedent's will was drafted by an attorney, Earl Bliss (hereafter Bliss), who had performed other legal services for decedent and Harold Goff. Myrtle first met Bliss at the funeral home the evening prior to decedent's burial. Shortly thereafter, she hired Bliss to act as attorney and counsel for the Estate. Bliss had extensive experience in the handling of estates and understood that the general duties required of an attorney handling an estate included preparing and filing the required Federal and state estate and inheritance tax returns. As part of his duties, Bliss performed the services required to have decedent's will probated and to have letters testamentary issued to petitioner. Under Myrtle's direction, he marshalled the assets and listed the debts of the decedent. Bliss opened the estate checking account and had physical possession of the checkbook for the account. Therefore, bank statements for the Estate were mailed to him. As part of his duties, Bliss or someone in his office prepared checks to pay obligations of the Estate. Myrtle, however, had the sole power *483 to sign checks for the Estate. The Estate's bills were mailed either to Myrtle, at her home address, the decedent, at his former address, or to Bliss at his office. Myrtle, either prior to the issuance of a check in payment of a bill or after the check had been drawn, but before signature, reviewed the bill to determine if it was a proper obligation of the Estate. Myrtle's son-in-law, George Carnrick (hereafter Carnrick), is a certified public accountant residing in New Jersey. During the administration of the Estate, Myrtle communicated with Carnrick fairly regularly with regard to estate matters and Carnrick also communicated with Bliss regarding taxes and tax returns required of the Estate. Myrtle often sought Carnrick's advice during the administration of the Estate which Carnrick rendered free of charge. Carnrick also prepared decedent's final income tax return. On February 23, 1972, Carnrick confirmed in a letter to Bliss that Bliss was to prepare the Federal estate tax return, which Carnrick mistakenly believed was due 15 months after decedent's death. Bliss knew prior to the letter of February 23 that he had this responsibility and that Myrtle had retained and *484 expected him to prepare the Federal estate tax return. Myrtle did not, however, specifically direct Bliss to file the return nor inquire as to when the return had to be filed. Myrtle was helpful in supplying Bliss with all the information needed to prepare the return and was active in the administration of the Estate although she relied on Bliss to comply with the various legal requirements. Prepayment of the New York Estate tax in the amount of $4,800 was made on May 1, 1972. Bliss later prepared an application to fix the New York State estate tax which was signed by Myrtle and filed on November 6, 1972. Carnrick was asked by Myrtle to review the New York estate tax form and he advised Myrtle that it appeared to be in proper order. After the New York State form was filed, Bliss was notified by mail that in order to finally fix the proper New York tax, a copy of the Federal estate tax return was required. A Form 706 purporting to be a Federal estate tax return for the Estate was prepared by Bliss and signed by Bliss as preparer and petitioner as executrix on January 19, 1973. Bliss then filed that form with New York State authorities in January 1973 in connection with the *485 processing of the New York estate tax. Predicated on such filing, Bliss requested a refund for the difference between the $4,800 previously paid and the tax as fixed under the New York order of $4,570.65. The Form 706 later filed with the Internal Revenue Service was in all pertinent respects identical to the Form 706 filed with New York State. On March 10, 1974, Myrtle called Carnrick after she received a letter from the attorney for Marie Goff, Harold Goff's widow, advising that no Federal estate tax return had yet been filed. She also forwarded a copy of this letter to Bliss. It was not until Carnrick received this call that he was aware that the return had not been filed, having until then believed that the Form 706 filed with New York State was the Federal estate tax return. The Federal estate tax return was prepared by Bliss and received by the District Director of Internal Revenue on February 19, 1974. Payment of $20,000 on behalf of the liability was received by the District Director on February 19, 1974. OPINION Petitioner contends that the late filing of the estate tax return was due to reasonable cause, within the meaning of section 6651(a) [2] since the executor *486 of the Estate relied upon Bliss, attorney to the Estate, to file the necessary return. [3]
*487 The regulations under section 6651(a) define reasonable cause in accordance with the following standard: if the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Where a taxpayer relies upon a tax adviser to inform him that a return is not necessary, he has done all that can reasonably be expected. Thus, once a taxpayer has used reasonable care to ascertain if a return is required, his inquiry has ended and reliance on a competent professional meets this burden where the professional says no return is due. ; , affd. ; , affd. , cert denied . And this is so even where the taxpayer simply tells the adviser to prepare all necessary returns and provides him with the necessary *488 information to do so, but has no reason to believe that a return should be filed (as where there is a complicated area of law), and a return is not filed. ; ; . However, where the taxpayer knows that a return should be filed, mere reliance on an accountant to prepare and file a return is insufficient to show ordinary care. [4], affd. without published opinion ; , affd. ; , affd. , cert. denied . This is also true when the taxpayer is under a duty to know (as is an executor) that a return must be filed. , *489 affd. as to this issue . *490 Thus, the executor is required, at a minimum, to ascertain when the return is due and to take appropriate steps to see that the obligation to file is fulfilled. , affd. ; , affd. , cert. denied . [5]
Myrtle supplied Bliss with all the information necessary to file the return prior to the time the return was due. [6] She knew that a return was required, and it was understood by all *491 parties that Bliss was to file and prepare the estate tax return; it is unstated in the record why he failed to timely do so. However, as noted earlier, this alone will not suffice to meet Myrtle's duty. See also . Myrtle was active in her role as executrix, although she relied on Bliss to comply with the various legal requirements. She also relied on her son-in-law, Carnrick, a C.P.A., to help insure proper tax treatment. Carnrick prepared decedent's final income tax return, and it was Carnrick who wrote Bliss regarding filing of the estate tax return. Carnrick believed, mistakenly, that the return was due 15 months after decedent's death. Within that time frame (14-1/2 months) Myrtle *492 signed a Form 706 which Bliss prepared for filing with New York State. Apparently, Bliss never told Carnrick that this form was not the Federal estate tax return, and Carnrick believed this to be the Federal return. We believe that Carnrick justifiably relied on this to assume that the Federal estate tax return was filed; thus, Carnrick believed that the estate tax return was timely filed. Petitioner relied either on the form itself or on Carnrick and believed the return was filed. In this context, one would expect that no more effort would be made by the Estate to insure timely filing. It seems clear to us that if an accountant tells a taxpayer who is without knowledge of tax matters and lacking business sophistication that a return is due later than is actually required, that such reliance would be reasonable cause for late filing. , affd. . Here, Myrtle apparently never attempted to find out when the return was due from either Carnrick or Bliss. There is no evidence in the record that suggests that Bliss did not know that the return was due in nine months. Myrtle *493 delegated her responsibility to Carnrick to insure proper and timely filing by Bliss.Although a C.P.A., Carnrick was not shown to be competent in tax matters (the record is silent on Carnrick's tax experience) and had no legal obligations to the Estate. Thus, it was not her reliance on Bliss' advice which caused the return to be filed late, but rather her reliance on Carnrick who mistakenly believed that the return was due in 15 months.Under these circumstances, we hold that petitioner has not shown reasonable cause. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect for the years in issue.↩
2. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; ↩
3. Petitioner relies on ; ; Fisher v. United States,↩ an unpublished order ( USTC par. 13,083); ; and , to establish the following criteria in determining what constitutes reasonable cause: (1) the taxpayer must be unfamiliar with tax law; (2) the taxpayer must have made full disclosure of all relevant facts to the attorney or accountant he has hired; and (3) the taxpayer has exercised ordinary business care and prudence, and that selecting a competent tax expert, supplying him with the necessary information, and asking him to prepare proper returns suffice to meet this standard.
4. It has been held that where the taxpayer has furnished the executed returns to the accountant, and the accountant is relied upon simply to file the return, reasonable cause has been satisfied. . Where the petitioner turned the preparation and filing of the estate tax return over to an attorney, and the attorney did not mail the return until the due date (for no reason apparent from the record), the court in , revg. a Memorandum Opinion of this Court, held that reasonable cause existed. Again, the return had apparently been executed by the taxpayer in sufficient time for timely filing by the attorney. However, it is not enough that the accountant prepare the tax returns in time for filing; the taxpayer must actually also rely on the accountant to file the return. . See also ; ; Kaufmann v. Commissioner,↩ a Memorandum Opinion of this Court dated Apr. 5, 1954; but cf. dicta in , on appeal (3d Cir., Apr. 1, 1977), where this Court stated that mere reliance on an expert to perform the ministerial function of filing the return is insufficient to show reasonable cause.
5. On the basis of our discussion above, we agree with respondent that Fisher,supra, and , were wrongly decided. The district courts there erroneously relied on , a case involving a failure to file based on the attorney's advice that no return was required. Moreover, the Seventh Circuit stated that Giesen↩ was incorrectly decided. .
6. All the information necessary to file the Federal estate tax return was provided by Myrtle to Bliss no later than May 1972. The Form 706 filed with New York State in January 1973 contained the same information filed with the original state return, which was filed in November 1972. Prepayment of state inheritance taxes was made in May 1972, which payment was approximately $230 more than the final order fixing the tax.↩